UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARBIN JARQUIN and JUAN
URBINA, on their own behalf and on
behalf of those similarly situated,**

     **Plaintiffs,**

**v.**                                                     **Case No: 8:24-cv-477-MSS-AAS**

**BRANCH RECONSTRUCTION,
LLC and TIMOTHY BUTLER,**

     **Defendants.**

_____

<u>**ORDER**</u>

    **THIS CAUSE** comes before the Court for consideration of Plaintiffs' Motion

for Final Default Judgment. (Dkt. 13) Despite having been served, Defendants Branch

Reconstruction, LLC and Timothy Butler have failed to appear, answer, or otherwise

respond to the Complaint, which Plaintiffs filed on February 22, 2024. (Dkt. 1) The

Clerk entered default against each Defendant on March 26, 2024. (Dkts. 10, 11) Upon

consideration of all relevant filings, case law, and being otherwise fully advised, the

Court **GRANTS** Plaintiffs' Motion for Default Judgment and Costs and **DENIES**

**WITHOUT PREJUDICE** the Motion for Fees.

    **I.**     **BACKGROUND**

    Plaintiffs Marbin Jarquin ("Jarquin") and Juan Urbina ("Urbina"), on their

own behalf and on behalf of those similarly situated, initiated this action against

Defendants Branch Reconstruction, LLC ("Branch") and Timothy Butler ("Butler")

(collectively, "Defendants") for the recovery of unpaid minimum wages, liquidated damages, and attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA"). (Dkt. 1) Plaintiffs also raised claims under Florida common law and § 448.08, Florida Statutes (2024). (Id.) In the Complaint, Plaintiffs allege Branch is a Florida limited liability company engaged in the construction business with offices in Hillsborough County, Florida. (Id. at ¶ 3) Plaintiffs also allege Butler, a Florida resident, owns and operates Branch. (Id. at ¶ 43)

Plaintiffs allege that at all times material to this action, Defendant Branch was an enterprise covered by the FLSA. (Id. at ¶ 28) Specifically, Plaintiffs allege Branch "operated as an organization which sold and/or marketed its services and/or goods to customers from throughout the United States and also provided its services for goods sold and transported from across state lines of other states . . . ." (Id. at ¶ 26) They allege Branch "obtained and solicited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, and otherwise regularly engaged in interstate commerce, particularly with respect to its employees." (Id.) Plaintiffs allege that, "[u]pon information and belief, the annual gross revenue of [Branch] was at all times material hereto in excess of $500,000 per annum . . . ." (Id. at ¶ 27) Plaintiffs also allege they were engaged in interstate commerce for Branch. (Id. at ¶ 28)

As for Butler, Plaintiffs allege that during their employment with Branch, Butler maintained control of Branch's operations, was involved in its day-to-day functions,

provided Plaintiffs with their work schedules, controlled Branch's finances, and could cause Branch to pay or not to pay its employees. (Id. at ¶¶ 45–46)

Plaintiffs allege Defendant Branch employed them as construction workers. (Id. at ¶ 28) Jarquin alleges he worked between forty and sixty hours per week for Branch from March 2023 through November 6, 2023. (Id. at ¶¶ 12, 30) In exchange, Jarquin alleges Branch promised to pay him a salary of approximately $1,300 per week. (Id. at ¶ 10) However, Jarquin alleges he only ever received one paycheck from Branch, which compensated him for two weeks of employment. (Id. at ¶¶ 10, 13, 34) Urbina alleges he worked an average of sixty-one hours per week for Branch from February 2023 through October 26, 2023. (Id. at ¶¶ 14, 30) Urbina alleges Branch promised to pay him a salary of approximately $1,320 per week. (Id. at ¶¶ 10, 52) Nonetheless, Urbina alleges Branch only paid him $8,000 during his employment. (Id. at ¶ 54) Thus, Plaintiffs allege Defendants failed to pay them minimum and overtime wages as required by the FLSA. Plaintiffs allege Defendants' conduct was knowing and willful. (Id. at ¶¶ 39, 47)

On March 13, 2024, Plaintiffs filed returns of service that show Branch and Butler were served with process. (Dkts. 6, 7) To date, neither Defendant has filed an answer or other responsive pleading in this case. Upon Plaintiffs' Motion for Clerk's Default, (Dkt. 8), the Clerk entered default against each Defendant. (Dkts. 10, 11) Plaintiff filed a notice of voluntary dismissal as to the counts of the Complaint that raised claims under Florida law. (Dkt. 12) Plaintiffs then filed the Motion, requesting final judgment of default against each Defendant on Plaintiffs' FLSA claims. (Dkt. 13)

3

Plaintiffs seek an award of actual and liquidated damages and attorneys' fees and costs. (Id.)

## II.    LEGAL STANDARD & ANALYSIS

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment if it has jurisdiction over the claims and parties and there is a sufficient basis in the pleadings to support the relief sought. Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);[1] Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). In defaulting, a defendant admits the plaintiff's well-pleaded allegations of fact. Id. at 1245. But "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., 515 F.2d at 1206.

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages.  See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543–44 (11th Cir. 1985). Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or the submission of detailed affidavits establishing the necessary facts. See id. at 1544.

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### a. Jurisdiction

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, which confers jurisdiction for civil actions arising under federal law, because Plaintiffs sue Defendants under the FLSA, a federal statute. As for the Court's personal jurisdiction over Defendants, Plaintiffs allege Defendant Branch is a Florida limited liability company that does business and maintains offices in Hillsborough County, Florida. Plaintiffs also allege Defendant Butler is a Florida resident. The Court finds these allegations minimally sufficient to establish its jurisdiction over the parties. Accordingly, the Court assesses whether Plaintiffs' allegations establish Defendants' liability under the FLSA.

### b. Liability

The Complaint's allegations are sufficient to warrant a grant of default judgment in Plaintiffs' favor. The FLSA requires employers to pay a minimum wage to their employees. 29 U.S.C. § 206(a). The FLSA also prohibits an employee from working more than 40 hours per week unless the employee is compensated at "a rate not less than one and one-half times the regular rate at which he is employed." Id. at § 207(a)(2). "Any employer who violates [§ 206 or § 207] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." Id. at § 216(b).

"To trigger liability under the FLSA's overtime and minimum wage provisions, a plaintiff must show: (1) an employee-employer relationship exists between the

5

parties, and (2) he is 'covered' by the FLSA." <u>Cabreja v. SC Maintenance, Inc.</u>, No. 19-cv-296, 2019 WL 2931469, at *3 (M.D. Fla. June 19, 2019) (citing <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1298 (11th Cir. 2011)). As to the first element, "[a]n employee is 'any individual employed by an employer,' while an 'employer' includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .'" <u>Id.</u> (quoting 29 U.S.C. § 203(e)(1) and (d)) (noting an individual is derivatively liable for an employer's FLSA violation if he "(1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment"). As to the second element, a plaintiff may establish he is "covered" by the FLSA by showing one of two types of FLSA coverage: individual coverage or enterprise coverage. <u>Josendis</u>, 662 F.3d at 1298. "[A]n employee may claim 'individual coverage' if he regularly and 'directly participat[es] in the actual movement of persons or things in interstate commerce.'" <u>Id.</u> (quoting <u>Thorne v. Restoration Servs., Inc.</u>, 448 F.3d 1264, 1266 (11th Cir. 2006)). A plaintiff may claim "enterprise coverage" if the plaintiff's employer

> "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and . . . has an "annual gross volume of sales made or business done . . . not less than $500,000."

<u>Gaviria v. Maldonado Brothers, Inc.</u>, No. 13-60321, 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (quoting 29 U.S.C. § 203(s)(1)(A)).

6

Plaintiffs allege sufficient facts to establish an employer-employee relationship existed between them and Defendants. By their default, Defendants admit Defendant Branch employed Plaintiffs as construction workers. (Dkt. 1 at ¶ 28) Defendants admit Defendant Branch employed Jarquin from March 2023 to November 2023, and Urbina from February 2023 to October 2023. (Id. at ¶ 30) They also admit Defendant Butler owned and operated Branch; maintained control of Branch's operations; was involved in its day-to-day functions; provided Plaintiffs with their work schedules; controlled Branch's finances; and could cause Branch to pay or not to pay its employees. (Id. at ¶¶ 43, 45–46) These allegations are sufficient to establish an employer-employee relationship between each Plaintiff and Defendants.

Plaintiffs also allege sufficient facts to establish that Defendants are covered by the FLSA. Plaintiffs allege Branch "sold and/or marketed its services and/or goods to customers from through the United States and also provided its services for goods sold and transported from across state lines of other states . . . ." (Id. at ¶ 26) They allege, "Upon information and belief, [Branch's] annual gross revenue . . . was at all times material hereto in excess of $500,000 per annum . . . ." (Id. at ¶ 27) Plaintiffs allege Branch, as a "construction company," affects interstate commerce, and Plaintiffs' work for Branch also affects interstate commerce. (Id. at ¶ 28) These allegations are sufficient to establish enterprise coverage.

By their default, Defendants admit they willfully failed to pay Plaintiffs minimum wages and overtime compensation as required by the FLSA. (Id. at ¶¶ 39, 47) See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307

(11th Cir. 2009). Thus, the Court finds Plaintiffs Campbell and Katsiamakis are entitled to default judgment against Defendants on their claims for unpaid minimum wages.

### c.  Damages

Plaintiffs seek awards of actual and liquidated damages based on their FLSA claims. Under Rule 55 of the Federal Rules of Civil Procedure, the Court may award Plaintiffs damages without a hearing if their claims are "for a sum certain that can be made certain by computation." "A plaintiff may establish the necessary amount of damages by affidavit." <u>Swisher v. The Finishing Line, Inc.</u>, 2008 WL 4330318, No. 07-cv-1542, at *2 (M.D. Fla. Sept. 22, 2008) (citing Fed. R. Civ. P. 55(b)). In an action for unpaid minimum wages under the FLSA, a plaintiff is entitled to recover the federal minimum wage applicable at the time. <u>Kimball v. Pradius Realty, Inc.</u>, No. 05-cv-1584, 2006 WL 8448580, at *2 (M.D. Fla. Mar. 28, 2006). In an action for unpaid overtime compensation, a plaintiff is entitled to recover for uncompensated overtime hours at "a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2).

In support of their claims for damages, Plaintiffs Jarquin and Urbina each submit a declaration detailing the number of hours he worked without minimum wage or overtime compensation. (Dkts. 13-1, 13-2).

### i.  Jarquin's Damages

Jarquin asserts he worked an average of 50 hours per week from March 2023 through November 6, 2023, but Defendants only paid him for two weeks of work.

8

(Dkt. 13-1) Jarquin assumes he is entitled to recover Florida's minimum wage in this action. Thus, Jarquin seeks $11 per hour in minimum wages for his work performed for Defendants between March 2023 and September 30, 2023, and $12 per hour in minimum wages for his work performed from September 30, 2023 through November 6, 2023.[2] (Id.) Jarquin seeks minimum wage compensation for 33 weeks of employment. (Id.) Based on his assumptions and a mathematical error,[3] he contends he is entitled to $37,950.00 as actual damages. (Id.)

The Court reaches a different conclusion as to Jarquin's actual damages for unpaid minimum wages because the federal minimum wage in effect throughout Jarquin's employment was $7.25 per hour.[4] The Court accepts his declaration that he worked an average of 50 hours per week. The Court also accepts Jarquin's calculation that he is entitled to 33 weeks' worth of unpaid minimum wages. The Court calculates the unpaid minimum wages by multiplying the federal minimum wage by 40 hours for

---

[2] *Florida Minimum Wage History 2000 to 2024*, FLORIDA COMMERCE, https://www.floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2024-minimum-wage/2000-2024-florida-minimum-wage-history.pdf (last visited Jan. 28, 2025) (showing the Florida minimum wage effective from September 30, 2022 to September 29, 2023 was $11, and the Florida minimum wage effective from September 30, 2023 to September 29, 2024 was $12).

[3] Jarquin's calculation is as follows: Pre-September 30, 2023: $11 x 50 (average hours worked per week) x **33 (compensable weeks)** = $18,150. Post-September 30, 2023: $12 x 50 (average hours worked per week) x **33 (compensable weeks)** = $19,800. Jarquin does not say when he received his one paycheck from Defendants, but the Court will assume the paycheck compensated him for work performed before September 30, 2023. Thus, the calculation should be as follows: Pre-September 30, 2023: $11 x 50 (average hours worked per week) x **28 (compensable weeks)** = $15,400.00. Post-September 30, 2023: $12 x 50 (average hours worked per week) x **5 (compensable weeks)** = $3,000.00.

[4] *Changes in Basic Minimum Wages in Non-Farm Employment Under State Law: Selected Years 1968 to 2024*, U.S. DEP'T OF LABOR, https://www.dol.gov/agencies/whd/state/minimum-wage/history (last visited Jan. 7, 2025) (showing the minimum wage for federal jurisdictions from 2022 to 2024 was $7.25 per hour).

each week Jarquin worked for which he was not paid. Accordingly, the Court finds Jarquin is entitled to $9,570.00 in unpaid minimum wages. Additionally, under 29 U.S.C. § 216(b), Jarquin is entitled to liquidated damages in an amount equal to his actual damages. Thus, Jarquin is entitled to recover a total of $19,140.00 on his unpaid minimum wages claim.

As for Jarquin's claim for unpaid overtime compensation, Jarquin avers Defendants promised to pay him $1,300 per week. (Dkt. 13-1) Because Jarquin worked an average of 50 hours per week, Jarquin concludes his hourly rate was $26 per hour. (Id.) Jarquin worked approximately ten hours of overtime each week, (id.), for which he is owed $39 per hour. Jarquin was not compensated for 33 weeks of employment. (Id.) Thus, Jarquin is entitled to recover $12,870.00 in unpaid overtime compensation. Under 29 U.S.C. § 216(b), Jarquin is entitled to liquidated damages in an amount equal to his actual damages. Thus, Jarquin is entitled to recover a total of $25,740 on his unpaid overtime compensation claim.

In total, the Court awards Jarquin $44,880.00 in actual and liquidated damages for his FLSA claims.

### ii.  Urbina's Damages

Urbina asserts he worked an average of 60 hours per week from February 2023 through October 26, 2023, but Defendants only paid him $8,000. (Dkt. 13-2) Urbina assumes his term of employment was 38 weeks. Based on Urbina's calculations, he contends he is entitled to $42,160.00 as actual damages for unpaid minimum wages. (Id.)

The Court concludes Urbina is entitled to $3,020.00 in actual damages for unpaid minimum wages. The federal minimum wage in effect throughout Urbina's employment was $7.25 per hour.[5] The Court accepts his declaration that he worked an average of 60 hours per week. The Court also accepts Urbina's declaration that his term of employment was 38 weeks. The Court calculates the unpaid minimum wages by multiplying the federal minimum wage by 40 hours for each week Urbina worked, which equals $11,020.00. The Court then subtracts the $8,000 he was paid. Accordingly, the Court finds Urbina is entitled to $3,020.00 in unpaid minimum wages. Urbina is entitled to liquidated damages in an amount equal to his actual damages. Thus, Urbina is entitled to recover a total of $6,020.00 on his unpaid minimum wages claim.

As for Urbina's claim for unpaid overtime compensation, Urbina avers Defendants promised to pay him $1,320 per week. (Dkt. 13-2) Because Urbina worked an average of 60 hours per week, Urbina concludes his hourly rate was $22 per hour. (Id.) Urbina worked approximately 20 hours of overtime each week, (id.), for which he is owed $33 per hour. Urbina was not paid overtime compensation for 38 weeks of employment. (Id.) Thus, Urbina is entitled to recover $25,080.00 in unpaid overtime compensation. Because he is entitled to liquidated damages in an amount equal to his actual damages, Urbina is entitled to recover a total of $50,160.00 on his unpaid overtime compensation claim.

---

[5] See U.S. DEP'T OF LABOR, *supra* note 4.

In total, the Court awards Urbina $56,180.00 in actual and liquidated damages for his FLSA claims.

### d. Attorney's Fees & Costs

The FLSA mandates an award of reasonable attorney's fees and costs to a prevailing plaintiff. Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1191 n.18 (5th Cir. 1979).[6] A prevailing plaintiff is "one who has been awarded some relief by the court" and "has prevailed on the merits of at least some of his claims." Buckhannon Bd. & Care Home, Inc. v. Va. Dep't of Health and Hum. Res., 532 U.S. 598, 603 (2001) (citations omitted). Here, Plaintiffs are prevailing plaintiffs under the FLSA because the Court finds they are entitled to default judgment against Defendants and awards of actual and liquidated damages. Accordingly, the FLSA mandates the Court award reasonable attorney's fees and costs to Plaintiffs.

"[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This calculation produces the "lodestar," which is then adjusted to reflect "results obtained." Id. The party seeking fees bears the burden of establishing the appropriate hours and hourly rates. Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).

---

[6] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

In determining the number of hours reasonably expended on litigation, "'excessive, redundant, or otherwise unnecessary'" hours must be excluded. Norman, 836 F.2d at 1301 (quoting Hensley, 461 U.S. at 343). Such hours are those "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*" Id. (emphasis in original) (internal quotations and citations omitted).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. "The fee applicant bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charges in similar circumstances or opinion evidence of reasonable rates." Dozier v. DBI Servs., LLC, No. 18-cv-972, 2023 WL 11959809, at *3 (M.D. Fla. Feb. 14, 2023) (citing Norman, 836 F.2d at 1299). "At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work[;] instead 'satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.'" Id. (Norman, 836 F.2d at 1299).

Once the lodestar is calculated, there is a "strong presumption" that it represents "the reasonable sum the attorneys deserve." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (citations omitted). However, the district court must consider whether the lodestar should be adjusted for "results obtained." Norman, 836 F.2d at 1302 (citing Hensley, 461 U.S. at 436–37). "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the

court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." Id.

In this case, Plaintiffs seek a fee award of $2,869.50. (Dkt. 13 at 7) Plaintiffs do not inform the Court the number of hours for which they were billed. Plaintiffs seek an hourly rate of $450 to compensate Plaintiffs' attorney, and an hourly rate of $75 for "the support team (legal assistants)." (Id.) In support of their fee application, Plaintiffs purport to supply a billing record as Exhibit C to the Motion, but the document at Exhibit C is plainly a record of Plaintiffs' taxable costs.

The documentation Plaintiffs provide to support their fee application is insufficient. Without evidence of the number of hours for which Ms. Jiminez and Ms. Ortiz billed Plaintiffs, the Court cannot determine whether the number of hours billed is reasonable. Additionally, Plaintiffs provide no evidence or opinion testimony from which the Court could determine Ms. Jiminez's or Ms. Ortiz's skill-level, experience, or reputation. See Norman, 836 F.2d at 1299; Plum Creek Tech., LLC v. Next Cloud, LLC, No. 19-cv-1974, 2020 WL 3317897, at *4 (M.D. Fla. June 3, 2020). Likewise, Plaintiffs provide no evidence that an hourly rate of $450 is "the prevailing market rate" in Tampa or in the Middle District of Florida for similar services by lawyers comparable to Ms. Jiminez, or that an hourly rate of $75 is "the prevailing market rate" in Tampa or in the Middle District of Florida for similar services by legal assistants comparable to Ms. Ortiz. See Norman, 836 F.2d at 1299; Plum Creek, 2020 WL 3317897, at *4. Accordingly, the Court **DENIES** Plaintiff's request for attorneys' fees without prejudice.

14

As prevailing parties, Plaintiffs are also entitled to an award of costs. Under the FLSA, the following may be taxed as costs:

> (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees related to printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court-appointed experts and fees related to interpretation services.

Pilipajc v. Atria Grp., LLC, No. 13–cv–2415, 2016 WL 7228875, at *5 (M.D. Fla. Jan. 19, 2016) (citing 28 U.S.C. § 1920); see also E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000) (holding that private process server fees are taxable costs under § 1920). Plaintiffs attach a record of costs associated with Plaintiffs' prosecution of this action. (Dkt. 13-3) Although the record contains no description for the $405 charge, the fee equals the filing fee Plaintiffs paid when filing the Complaint. (Id.) As for the two $75 charges for "To be served on: Branch Reconstruction, LLC and Timothy Butler," the Court assumes each charge was for the service of process on one of the Defendants. (Id.) The $150 charge for "Office Expenses – postage, prints, and related expenses" is taxable. (Id.) Finally, the $70 charge for "Non-Military Affidavit request" is taxable as a fee related to a witness. (Id.) Thus, all the enumerated costs are compensable under § 1920. Accordingly, Plaintiffs are entitled to an award of costs equal to $775.00.

### e. Post-Judgment Interest

Plaintiffs are entitled to recover post-judgment interest under 28 U.S.C. § 1961(a)(b). Post-judgment interest shall be calculated from the date of judgment "at a

rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Id. Such interest "shall be computed daily to the date of payment . . . , and shall be compounded annually." Id.

## III.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1.  Plaintiffs' Motion for Default Final Judgment, (Dkt. 13), is **GRANTED IN PART and DENIED IN PART**.

2.  Plaintiff Jarquin is entitled to recover $44,880.00 in actual and liquidated damages from Defendants.

3.  Plaintiff Urbina is entitled to recover $56,180.00 in actual and liquidated damages from Defendants.

4.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** as follows: Judgment is entered **FOR** Plaintiffs Jarquin and Urbina and **AGAINST** Defendants Branch Reconstruction, LLC and Timothy Butler. For Plaintiff Jarquin, judgment is entered in the amount of $44,880.00. For Plaintiff Urbina, judgment is entered in the amount of $56,180.00."

5.  Plaintiffs are awarded $775.00 in costs.

6.  Plaintiffs' application for attorneys' fees is **DENIED WITHOUT PREJUDICE**. Plaintiffs are permitted leave to file a renewed motion for attorneys' fees within twenty-one (21) days of the date of this Order that

16

includes the documentation and evidence necessary for the Court to determine a reasonable award of attorneys' fees under the applicable legal standard.

**DONE** and **ORDERED** in Tampa, Florida, this 7th day of February 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any pro se party

17